UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BEKEE C. NWAKANMA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 4:10-cv-1128 |
| § | |
| TEXAS DEPARTMENT OF CRIMINAL § | |
| JUSTICE, ET AL., § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Texas Department of Criminal Justice's Motion for Summary Judgment. (Doc. No. 85.) After considering the motions, all responses thereto, and the applicable law, the Court finds that Defendant's Motion for Summary Judgment must be **GRANTED.**

**I.     BACKGROUND**

Bekee Nwakanma ("Plaintiff" or "Nwakanma") sues Defendant Texas Department of Criminal Justice ("TDCJ") for unlawful discrimination and retaliation in violation of Title VII and 42 U.S.C. § 1983. Plaintiff sues Lisa Howard and Bobby Lumpkin as agents under TDCJ. Plaintiff alleges that Defendants discriminated against him based upon his race (black), his color, his national origin, and his religion (Seventh Day Adventist), and that they retaliated against him for making complaints of discrimination. Both causes of action arise from the same set of facts. For the purposes of this Motion, the Court accepts Plaintiff's allegations as true.

1

Plaintiff worked for TDCJ for twenty years before he was allegedly terminated in 2011. (Doc. No. 73, Pl. Fifth Am. Compl., ¶ 7.) During this time, Plaintiff pursued and attained additional degrees. (*Id.*) Plaintiff applied for promotions, but did not receive a promotion in the twenty years with TDCJ. (*Id.* at ¶ 8.) Plaintiff alleges that other employees with lesser experience and fewer degrees—and who are neither black nor Seventh Day Adventists—were promoted ahead of him. (*Id.*) In one instance, Plaintiff alleges that he was passed over for someone two experience levels below him. (*Id.*) In other instances, he was passed over for individuals who did not even apply for the positions in question. (*Id.*) Though never promoted, Plaintiff claims he was charged with handling responsibilities traditionally handled by those in the advanced positions to which Plaintiff sought, and was denied, promotions. (*Id.* at ¶ 10.)

Defendants also failed to give Plaintiff performance evaluations in 2007 and 2008, despite the fact that every other employee in his department was given such evaluations. (*Id.* at ¶ 9.) Plaintiff believes that TDCJ's failure to evaluate him was intentional, and was part of an effort to hinder his ability to be considered for a promotion. (*Id.*)

Plaintiff's religion, Seventh Day Adventism, does not allow him to work on Saturdays. (*Id.* at ¶ 11.) Despite TDCJ's awareness of his religious conflict, Plaintiff alleges he was required to work on multiple Saturdays. (*Id.*) Plaintiff also alleges that, throughout his employment with TDCJ, he was belittled, treated with continuing disrespect, excluded from meetings and activities, and insulted because of his accent and his religious practices. (*Id.* at ¶ 14.)

Finally, Plaintiff alleges that he complained of discrimination and was retaliated against for making such complaints. Defendants Lumpkin and Howard, who were aware of his complaints of discrimination, placed Plaintiff on a three-month probation in November 2007. (*Id.* at ¶ 12.) Plaintiff claims he was retaliated against for complaining of discrimination, and his complaints were taken into account when he was evaluated by Howard and Lumpkin in November 2007. (*Id.* at ¶ 13.) Plaintiff was subsequently reinstated. (*Id.*)

After the filing of this lawsuit, Plaintiff alleges that Defendants gave him two options: retirement or termination. (*Id.* at ¶ 24.) Plaintiff claims he was forced into retirement. (*Id.*) All conditions precedent to jurisdiction have been filed. Plaintiff filed charge numbers 460-2008-03363, 460-2010-01743, and 460-2011-1354 with the Equal Employment Opportunity Commission ("EEOC") within three hundred days of the material acts. The Original Complaint was filed within ninety days of Plaintiff's receipt of the EEOC's issuance of a right to sue letter for charge number 460-2008-03363. Plaintiff's Fourth Amended Complaint was filed within ninety days of the EEOC's issuance of a right to sue letters for charge numbers 460-2010-01743, and 460-2011-1354. (*Id.* at ¶ 6.)

## II.    LEGAL STANDARD

### A.  Summary Judgment

A court must grant summary judgment if the pleadings and evidence show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need

not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party then must go beyond the pleadings to find specific facts showing there is a genuine issue for trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (footnote omitted) (internal quotation marks omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Id.* at 1076 (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Servs., LLC*, 341 F. App'x 26, 28 (5th Cir. 2009) (citation omitted). The Court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075.

### B. Section 1983

A municipality may be held liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality may not be liable under Section 1983 based on the doctrine of *respondeat superior*; there must be a direct causal link between

a government policy or custom and the injury suffered by a plaintiff. *Id*. at 691; s*ee also Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992) ("A municipality, of course, can act only through its human agents, but it is not vicariously liable under § 1983."). In order to impose liability upon a municipality, a plaintiff must plead and prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Bustos v. Martini Club Inc.,* 599 F.3d 458, 467 (5th Cir. 2010) (*quoting Peterson v. City of Fort Worth,* 588 F.3d 838, 847 (5th Cir. 2009)).

### C. Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee based on the individual's race. Intentional discrimination can be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the Title VII claims lack direct evidence of discrimination, they will be analyzed according to the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell* framework, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. To meet this burden, the plaintiff must show 1) he is a member of a protected class, 2) he was qualified for the job, 3) he suffered an adverse employment action, and 4) others outside the protected group were treated more favorably. *Id.* If the plaintiff succeeds in making the *prima facie* case, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the treatment of the plaintiff. *Id*. If the defendant offers a nondiscriminatory reason, the

burden shifts back to the plaintiff to show that the employer's reason for the disparate treatment is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).

### III. ANALYSIS

#### A. Title VII

##### 1. *Failure-to-Promote Claims*

Plaintiff cannot succeed on any of his failure-to-promote claims. Plaintiff fails to establish a *prima facie* case for two failure-to-promote claims. Plaintiff identified two Program Specialist III positions as instances of failure-to-promote (Doc. No. 85, Ex. 5), but TDCJ records indicate that he did not apply for either of these positions. (Doc. No. 85, Ex. 1, p. 8; Ex. 6.) Since applying for a job is the second prong of establishing *prima facie*, the Court must grant summary judgment to Defendants on these two claims.

TDCJ records show that Plaintiff did apply for three positions for which he was not promoted: Manager IV, Program Specialists III, and Manager III. (Doc. No. 85, Ex. 1, p. 8.) Defendant does not challenge Plaintiff's *prima facie* case in these three instances. Therefore under the *McDonnell* framework, the burden shifts to Defendants to produce evidence of a legitimate, nondiscriminatory reason for the treatment of Plaintiff. 411 U.S. at 802. Defendants claim that Plaintiff was not promoted to any of these three positions because other candidates were better qualified. (Doc. No. 85, Ex. 1, p. 8; Ex. 2, pp. 2-3; Exs. 7-9.) The Fifth Circuit has held that an employer's decision to promote a better qualified individual is a legitimate reason for another applicant's denial. *See Price v. Fed. Exp. Corp.*, 283 F.3d 715, 721 (5th Cir. 2002). Once Defendants offer a nondiscriminatory reason, the burden shifts back to Plaintiff to show that the employer's

reason for the disparate treatment is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000). Plaintiff fails to provide any argument that Defendants' legitimate reason was merely pretext.

Plaintiff applied for a position as Manager IV in July 2007. The position was awarded to Bobby Lumpkin by Celeste Byrne, Director of the Private Facility. (Doc. No. 85, Ex. 1, p. 8; Ex. 7, p. 4.) Lumpkin was chosen for his extensive experience in many facilities within the system, including Assistant Warden at the Ellis Unit. (Doc. No. 85, Ex. 2, pp. 2-3.) Byrne stated that Plaintiff's limited experience "fell well short when compared to Mr. Lumpkin's extensive background in both the security side of prison management and his administrative experience of ensuring TDCJ's compliance with ACA standards and agency rules." (Doc. No. 85, Ex. 2, p. 3; Ex. 7, pp. 17-12.) Lumpkin possessed a college degree and substantial relevant work experience. (Doc. No. 85, Ex. 2, p. 3; Ex. 7, pp. 5, 7-13.) Plaintiff had no security experience in the secured facilities. (Doc. No. 85, Exs. 2 & 7.) Plaintiff offers no argument that Byrne's reasons for selecting Lumpkin were pretextual.

Plaintiff also applied for a position as Program Specialist III/Contract Monitor. The position was awarded to Kenneth Jolley, who is an African-American. (Doc. No. 85, Ex. 1, p. 30.) Jolley had extensive experience in both state and federal agencies and the private sector. Plaintiff did not testify that he was clearly better qualified, only that he was also qualified. (Doc. No. 85, Ex. 23, p. 187:16 – 188:8.) "The employer's judgment as to qualifications will not be probative of the issue of a discriminatory motive unless the qualifications are so widely disparate that no reasonable employer would have made the same decision." *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d

277, 282 (5th Cir. 1999). Plaintiff cannot simply use this claim as judicial second-guessing of business decisions. *See Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997).

Plaintiff applied for a position as a Manager III/Clinical. (Doc. No. 85, Ex. 9.) Plaintiff has not presented any evidence that he failed to obtain this position because of discrimination. He does assert that his annual evaluation was turned in late. However, TDCJ records show that eight of Novelli's employee 2008 evaluations were late for white, Hispanic, and black employees. (Doc. No. 85, Ex. 21.) No inference of discrimination or retaliation can be drawn since other similarly situated employees of different races and backgrounds had their evaluations turn in late as well. Therefore, Plaintiff's failure-to-promote claims fail as a matter of law.

### 2. *Disciplinary Action Claims*

Plaintiff's claims based on disciplinary actions must also fail as a matter of law. In November 2007, Plaintiff was assessed three months disciplinary probation following a report on a verbal confrontation with a TDCJ help desk supervisor. (Doc. No. 85, Ex. 1, pp. 11-12.; Ex. 15, pp. 101-117.) Plaintiff contests the disciplinary action as based on a sham investigation. First, probation does not meet the definition of adverse employment action prong of a *prima facie* discrimination claim. *Stewart v. Mo. Pac. R.R.*, 121 Fed.Appx. 558, 561-63 (5th Cir. 2005). Secondly, even if Plaintiff established a *prima facie* case of discrimination, he presents no evidence to show that this discrimination or retaliation was more than just his subjective belief. *Roberson v. Alltell Info. Serv.*, 373 F.3d 647, 654 (5th Cir. 2004) ("[A] plaintiff cannot merely rely on his subjective belief that discrimination has occurred . . . to establish pretext."). Therefore, summary judgment

8

must be granted for Defendant on claims arising out of the November 2007 disciplinary action.

In April 2009, Plaintiff was disciplined for failing to turn in his reports on time. (Doc. No. 85, Ex. 1, pp. 12-13; Ex. 16, pp. 119, 124-136; Ex. 24, Lumpkin Depo., pp. 53-54.) This discipline followed TDCJ's policy and was within TDCJ's guidelines. (Doc. No. 85, Ex. 1, pp. 9-15; Ex. 16, p. 119.) As discussed above, probation is not an adverse employment action for purposes of establishing a *prima facie* case.

In June 2010, Plaintiff was reminded by his supervisor, Steve Fox, that reports of unscheduled, unannounced site visits were to be made within 24 hours. (Doc. No. 85, Ex. 17, p. 155.) Plaintiff does not dispute that he missed the deadline for five such reports in September 2010. (Doc. No. 85, Ex. 17, pp. 146-53.) Following notice, an opportunity to be heard, and a guilty finding, Lumpkin sentenced Plaintiff to ten months of disciplinary probation and three days of suspension without pay. (Doc. No. 85, E. 1, pp. 9-11, 13; Ex. 3, pp. 9-10; Ex. 17, p. 138.) The three days' suspension without pay constitutes an ultimate employment decision for purposes of Title VII, so Plaintiff makes a *prima facie* case. Defendants offer a legitimate, nondiscriminatory reason: even Plaintiff admits the reports are late. Thus the burden shifts back to Plaintiff to show pretext. Plaintiff only speculates that his supervisor and managers are against him. However, the Fifth Circuit has stated that "a dispute in the evidence concerning ... job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

Lastly, Plaintiff alleges that he was forced to retire after a disciplinary write up in January 2011. However, one month before the write up, Plaintiff had set into motion his plan to retire on January 31, 2011. (Doc. No. 85, Ex. 20, p. 245.) Plaintiff does not produce any other evidence that he was forced to retire. Therefore, all claims arising out of disciplinary actions taken against Plaintiff must fail as a matter of law.

### 3. *Hostile Work Environment*

Plaintiff claims the discrimination he allegedly suffered created a hostile work environment. In determining whether an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (*quoting Harris v. Forklift*, 510 U.S. 17, 23 (1993)). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Id.* (*quoting Shepherd v. Comptroller of Pub. Accounts,* 168 F.3d 871, 874 (5th Cir.1999). Plaintiff has not provided any evidence that his supervisors made any derogatory statements about his race, religion, or the filing of his EEOC charges. He has not demonstrated that there was a hostile work environment.

### 4. *Religious Discrimination Claims*

Plaintiff's religious discrimination claims fail as a matter of law. To establish a *prima facie* case of religious discrimination under Title VII, Plaintiff must establish that he had a bona fide religious belief that conflicted with an employment requirement, that

10

he informed the employer of his belief, and that he was discharged for failing to comply with the conflicting employment requirement. *Weber v. Roadway Exp., Inc*., 199 F.3d 270, 273 (5th Cir. 2000). An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship. *Id.* Plaintiff submitted a written request in March 2006 to be relieved of work during his Sabbath from "evening to evening, sunset to sunset" Friday to Saturday. (Doc. No. 85, Ex. 12, pp. 85-86.) Lumpkin stated that Plaintiff had not completed the formal request for religious accommodation from TDCJ but that he "would unofficially accommodate his request . . . except in the case of an emergency." (Doc. No. 85, Ex. 3, p. 7.)

It appears that Plaintiff received a right-to-sue letter from the EEOC and did not file a lawsuit within the 90-day limitation period. (Doc. No. 85, Ex. 10.) Therefore, this claim is stale. However, even if Plaintiff could proceed on this claim, he would not succeed. Plaintiff admitted that he never actually worked on his Sabbath. (Doc. No. 85, Ex. 23, pp. 110-13.) It appears that Plaintiff was called during his Sabbath one time for an emergency, but Plaintiff refused to work. (Doc. No. 85, Ex. 4, pp. 3-4.) Plaintiff does not allege that he suffered any adverse action for refusing to work on the Sabbath. Plaintiff does not allege any derogatory remarks concerning his religion. Therefore, summary judgment must be granted for Defendant on this claim.

### 5. *Disparate Pay*

Plaintiff complains that he was not paid for work performed equal to that of other employees. However, Plaintiff was paid in accordance with state salary classifications determined by statute and the State Comptroller's audit decision. (Doc. No. 85, Ex. 1, pp.

3-8; Ex. 3, pp. 6-7.) Plaintiff was paid the same as other employees in his same position. (*Id.*) Plaintiff does not raise a genuine issue of material fact that he was paid differently from other employees in the same position. Therefore, Plaintiff's disparate pay claim fails as a matter of law.

### B. Retaliation

Plaintiff claimed retaliation in each of the EEOC charges underlying this lawsuit. The Fifth Circuit has noted that "the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a *prima facie* case." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Plaintiff must show that he suffered a materially adverse retaliatory action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "To demonstrate that a retaliatory action was materially adverse, [plaintiff] must show that the action might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Magiera v. City of Dallas*, 389 Fed.Appx. 433, 437-38, fn. 3 (5th Cir. 2010). Lumpkin's transfer and Howard's Employee Performance Log and reinstatement of the five day work week do not constitute material adverse actions for a retaliation claim. Lumpkin's transfer did not involve a loss of pay, grade, title, hours of work, or benefits. (Doc. No. 85, Ex. 3, p. 8.) Since this action did not affect Plaintiff in a materially adverse way, he cannot succeed on his retaliation claim.

### C. Section 1983

Defendants Lumpkin and Howard are government officials who are shielded from liability under qualified immunity because they acted within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of

which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official's conduct is objectively reasonable unless all reasonable officials in the Defendants' circumstances would have then known that the conduct violated the Constitution. *Hampton v. Oktibbeha County Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007). It was reasonable that Lumpkin and Howard held Plaintiff accountable for poor work performance. Therefore, Plaintiff cannot succeed on his § 1983 claim.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that Defendant's Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 27th day of June, 2013.

THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE